UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

In re:  Case No. 13-31953-DOf

**THAMER S. GASSO,**  Chapter 11
**LAMIA T. GASSO,**

HON. DANIEL S. OPPERMAN

Debtors.
_____/

### UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' COMBINED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION, DOCKET #45

Daniel M. McDermott, United States Trustee, pursuant to 28 U.S.C. § 586(a)(3)(B), states:

1. Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 on May 31, 2013.

2. The Debtors filed their Combined Disclosure Statement and Plan of Reorganization on September 30, 2013, Docket #45.

3. The United States Trustee objects to confirmation of the Debtors' proposed plan (the Plan).

**U.S. TRUSTEE FEES AND MONTHLY OPERATING REPORTS**

4. The proposed Plan fails to clearly and adequately provide for the payment of U.S. Trustee quarterly fees.

5. Article IX of the Plan (page 14 of 37) simply provides that the Debtors shall pay the U.S. Trustee appropriate sums required pursuant to 28 U.S.C. §1930(a)(6).

6. Pursuant to 28 U.S.C. §1930(a)(6), a Debtor is required to pay quarterly fees to the United States Trustee for each quarter or partial quarter that the case is pending until such time as the case has been converted, dismissed or closed by the Bankruptcy Court. The fees are

due no later than the end of the month following the conclusion of each quarter. Interest accrues and is payable on any delinquency pursuant to 31 U.S.C. §3717.

7. To adequately and clearly protect his interest in the payment of quarterly fees, the U.S. Trustee requests the following language be included in an Order Confirming Plan:

> The Reorganized Debtors shall continue to remit to the office of the United States Trustee all appropriate post confirmation monthly reports/affidavits for all relevant time periods and shall continue to remit quarterly fee payments in full based on all disbursements for the relevant period(s) until the case is closed by order of the court. To the extent any monthly reports/affidavits are not timely provided or fees are not paid in full, this case may be re-opened by the office of the United States Trustee to file such Motions or take such action as appropriate to be provided with such reports and paid any fees owed or due.

8. The U.S. Trustee also requests the following language to ensure the Debtors' continuing obligation to file monthly operating reports:

> The Debtors shall continue to remit to the office of the United States Trustee all appropriate post confirmation monthly reports/affidavits for all relevant time periods and shall continue to remit quarterly fee payments in full based on all disbursements for the relevant period(s) until the case is closed by order of the court. To the extent any monthly reports/affidavits are not timely provided or fees are not paid in full, this case may be re-opened by the office of the United States Trustee to file such Motions or take such action as appropriate to be provided with such reports and paid any fees owed or due.

**PROPOSED EXCULPATION AND LIMITATION OF LIABILITY**

9. The proposed Plan, in Article XII, paragraph 12.1, provides for the limitation of liability for the Debtors, and any of its director, officers and agents, including counsel, accountants, consultants and employees. The paragraph further provides that the exculpated parties shall not incur any liability to "the Debtor, the Reorganized Debtor, and Creditor or Interest holder of the Debtor or the Reorganized Debtor, and any other entity..." This provision is overly broad.

10. As a general proposition, "[e]xculpatory contracts are not favored by the law because they tend to allow conduct below the acceptable standard of care." *Yauger v. Skiing*

*Enterprises, Inc.*, 206 Wis.2d 76, 81, 557 N.W.2d 60, 62 (1996). See also, e.g. *A to Z Applique Die Cutting, Inc. v. 319 McKibbin St. Corp.* 232 A.D. 2d 512, 649 N.Y.S.2d 26 (N.Y. A.D. 1996); and *Borg-Warner Ins. Finance Corp v. Executive Park Ventures*, 198 Ga. App. 70, 400 S.E.2d 340 (Ga. App. 1990).

11. Exculpatory contracts in bankruptcy offend the standard of care and fiduciary duty owed by and expected from retained professionals. Their existence in bankruptcy cases violates public policy. Bankruptcy fiduciaries have always been held to particularly high standards of honesty and loyalty. *See generally, Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262, 278, 61 S. Ct. 493 (1941)(trustees); *Mosser v. Darrow*, 341 U.S. 267, 271, 71 S. Ct. 680 (1951).

12. The paragraph as it relates to the Professionals appears to include exculpation and limitation of liability from their own clients ("any other party in interest"). This result is inappropriate.

**FEASIBILITY**

13. The valuation of the Debtors' interests in his various business enterprises is critical to the analysis of this Plan and its feasibility. In the Disclosure Statement on page 18 of 37, the Debtors attempt to describe interests in the businesses. The valuation is, at best, an educated guess. And the explanation of the Debtors' obligations for each of the entities is confusing. Without accurate, clear and detailed explanations of the value of the businesses, it is impossible for creditors to evaluate feasibility of the Plan and whether any particular entity is necessary for the Debtors' reorganization.

14. The Debtor's cash flow projections are not sufficient to fund the proposed Plan. According to the projections (31 to 37, of 37), the Debtor's cash flow will be negative in several

months of the Plan. In total, it is estimated the Debtor's cash flow will be more than $500,000 in the negative over a 60 month period.

15. The Debtors' Plan suggests the shortfalls in cash flow will be cured by "funds from third parties, including family members and from the sale or refinancing of assets or contributions from Malik Abdulnoor."

16. The Debtors provide no explanation or details regarding the source of these funds, whether they will be in the form of loans, which assets can be sold or refinanced, or any other information that could be relevant to determine the viability of this approach.

17. The proposed solution for the cash flow shortfalls appears to be based solely on the Mr. Gasso's belief that he will somehow generate the additional funds needed to make Plan payments. Moreover, this solution, to the extent it requires the Debtor to incur additional debt, will likely lead to a need for further reorganization, or liquidation.

18. Additionally, the expense projections do not include any funds necessary for business improvement plans, which will be a significant obligation of the Debtors over the next several years.

19. The Plan is not feasible and therefore not confirmable.

**OTHER ISSUES**

*Post Petition Sale*

20. In June of this year, one of the Debtors' business interests was sold. This fact was revealed to the U.S. Trustee after the sale was consummated.

21. The post petition sale is revealed cryptically on page 19 of 37 under the heading "Legal Relationships". The Plan and Disclosure do not adequately describe and account for this transaction.

22. First, the transaction is not properly noted under the required heading "Post Petition Events of Significance" in Article III of the Disclosure Statement. In fact, the statement under this section is misleading and untrue.

23. Second, it is not entirely clear why the Debtor did not receive any of the sale proceeds. In fact, it appears from documents provided to the U.S. Trustee that he may have been entitled to a distribution. Notwithstanding, the Disclosure Statement should specifically describe the nature and details of the transaction.

24. Third, the post petition transfer was outside of the ordinary course of business, and not approved by the Bankruptcy Court. Creditors, and other parties in interest should have had an opportunity to examine the transaction and the benefits or detriment to the estate, *before* the sale was consummated.

### *Claims of Business Partners*

25. Many of the Debtors' business interests are owned together with Akram Namou and Malik Abdulnoor. Both of Mr. Gasso's business partners have filed claims in this case for amounts "no less than" $1,000,000.

26. Interestingly, the claims filed on behlaf of Mr. Abdulnoor and Mr. Namou were prepared and submitted by Debtors' counsel. This appears to be a direct conflict of interest.

27. Moreover, the claims are not supported by the information previously provided by the Debtors. The Debtors' schedules indicate amounts owed to the business partners were significantly less.

28. Despite numerous requests by the U.S. Trustee for an accounting of the amounts owed to the business partners, the Debtors have failed to satisfactorily explain these obligations.

**WHEREFORE,** the United States Trustee requests that confirmation of the Debtors' proposed First Combined Plan and Disclosure Statement, as presently constituted, be denied.

                        Respectfully submitted,

                        **DANIEL M. McDERMOTT**
                        **UNITED STATES TRUSTEE**
                        Region 9

By    /s/ Jill M. Gies (P56345)
        Jill. Gies@usdoj.gov
        Trial Attorney
        Office of the U.S. Trustee
        211 West Fort St - Suite 700
        Detroit, Michigan 48226
        (313) 226-7913

Dated: October 28, 2013