## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

In Re:

                                    **Case No. 13-31953-dof**

    **Thamer S. Gasso, and Lamia T. Gasso,**

                                    **Chapter 11**
                                    **Honorable Daniel Opperman**

           *Debtors.*

_____

## SECOND AMENDED
## DEBTOR'S COMBINED DISCLOSURE STATEMENT AND
## <u>PLAN OF REORGANIZATION</u>

**IMPORTANT! THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PROPOSED PLAN OF REORGANIZATION. PLEASE READ THIS DOCUMENT WITH CARE.**

Prepared By:
Robert N. Bassel  (P 48420)
Attorneys for Debtor
P.O. Box T
Clinton, MI 49236
(248) 677-1234

# I. PLAN OF REORGANIZATION

Debtor propose(s) the following Plan(s) of Reorganization (the "Plan") pursuant to §§1121 and 1123 of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

As used in this Plan, the following terms shall have the meanings specified below, unless the context requires otherwise:

1.1    **"Administrative Claim"** means costs and expenses of administration of the relevant  Chapter 11 case allowed under §§503(b) and 507(a) of the Bankruptcy Code and the fees of the United States Trustee under 28 U.S.C. §1430(a)(6).

1.2    **"Administrative Creditor"** shall mean any Creditor who asserts an Administrative Claim.

1.3    **"Allowed Claim"** or "**Allowed Claims**" or "**Allowed Interest**" means a Claim against or Interest in the Debtor to the extent that:

      A.    A Proof of Claim or Interest was:

          1.   Timely filed;

          2.   Deemed filed pursuant to §1111(a) of the Code; or

          3.   Filed late with leave of the Bankruptcy Court after notice and an opportunity for hearing given to Debtor, and counsel for Debtor; <u>and</u>

      B.    The Claim is not a Contested Claim or a Contested Interest, <u>or</u>

      C.    The Claim is allowed (and only to the extent allowed) by a Final Order of the Bankruptcy Court.

1.4    **"Avoidance Actions"** means all claims granted the debtor-in-possession or a trustee under §§ 544-553 of the Code.

1.5.  **"Ballot"** shall mean the official Bankruptcy Form or a document prepared to substantially conform to same being sent to all creditors and parties-in-interest entitled to vote for or against the Plan.

1.6  **"Bankruptcy Code"** or **"Code"** means the Bankruptcy Reform Act of 1978, as amended (11 U.S.C. §§101, et seq.), also known as the United States Bankruptcy Code.

1.7  **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and any court having jurisdiction over any appeals.

1.8  **"Bankruptcy Rules"** or **"Rules"** means the Federal Rules of Bankruptcy Procedure, and any amendments thereto.  To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the U.S. District Court for the Eastern District of Michigan, as amended and the Local Bankruptcy Rules for the Eastern District of Michigan, as amended.

1.9  **"Business Day"** means any day, other than a Saturday, Sunday or "Legal Holiday," as that term is defined in Bankruptcy Rule 9006(a).

1.10  **"Case"** means the relevant above-captioned case currently pending before the Bankruptcy Court.

1.11  **"Claim"** means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Contested, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.12  **"Class"** means a class of holders of Claims or Interests described in Article III of this Plan.

1.13  **"Confirmation Date"** means the date upon which the Bankruptcy Court shall enter the Confirmation Order in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.14 **"Confirmation Hearing"** means the hearing conducted by the Bankruptcy Court to consider the confirmation of the Plan filed by Proponent.

1.15 **"Confirmation Order"** means the order entered confirming this Plan by the Bankruptcy Court pursuant to §1129 of the Code.

1.16 **"Contested Claim"** means any Claim as to which the Debtor or any other party in interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Code, Bankruptcy Rules and this Plan, which objection has not been determined by a Final Order.

1.17 **"Creditor"** means any holder of a Claim against the Debtor.

1.18 **"Debtor"** means the relevant above-captioned chapter 11 debtor(s).

1.19 **"Effective Date"** means the 11th calendar day after the Confirmation Order becomes a Final Order.

1.20 **"Final Order"** means an Order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken; or (ii) any timely appeal has been finally determined or dismissed.

1.21 **"Impaired"** means a Claim treated under this Plan, unless the Plan:

(a) leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or

(b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default—

(1) cures any such default (other than defaults relating to (i) any penalty interest rate or provision arising from a non-monetary default by the Debtor; (ii) the solvency or financial condition of the Debtor or (iii) the commencement of this Case) that occurred before or after the commencement of the Case;

4

(2)     reinstates the maturity of such Claim or Interest as such maturity existed before such default;

(3)     compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

(4)     does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles its holder.

1.22     **"Insider"** shall mean a current or former director, shareholder, officer, partner, person in control, relative of a director, officer, partner or person in control of the Debtor or a corporation or entity in which an Insider (as defined above) of the Debtor is an Insider.

1.22.1 "**Interest Holder"** means the individual debtor.

1.23     **"Interest"** means an equity interest in the Debtor as defined in §101 of the Code.

1.24     **"Interest Rate"** means, unless specified, (a) with respect to Claims entitled to interest under §506 of the Bankruptcy Code and this Plan and having an applicable contractual rate of interest, the lowest rate of interest provided in such contract, without regard to any default by Debtor, (b) with respect to all other Claims entitled to interest under the Bankruptcy Code and this Plan, 5% per annum, or (c) with respect to (a) or (b) such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.25     **"IRS"** means the Internal Revenue Service, an agency of the United States of America, and its representatives, affiliated agencies and assignees.

1.26     **"Lien"** means a charge against, or an interest in property to secure payment of a debt or performance of an obligation.

1.27      **"New Value"** means such money or money's worth that has been paid or contributed by bidders for the new stock or residual interest of the Reorganized Debtor.

1.28     **"Petition Date"** means the date Debtor filed the Voluntary Petition commencing the Case under Chapter 11 of the Bankruptcy Code.

1.29  **"Plan"** means this Plan of Reorganization, as it may be altered, amended or modified from time to time.

1.30  **"Priority Claim"** means a Claim under or entitled to priority under Code §507(a) of the Code.

1.31  **"Priority Creditor"** means a Creditor who asserts a Priority Claim.

1.32  **"Professional Fees"** means the fees and reimbursement for disbursements owed to attorneys, accountants, or other professionals whose employment has been approved by the Bankruptcy Court.

1.33  **"Reorganized Debtor"** shall mean the Debtor, on and after the Effective Date.

1.34  **"Secured Claim"** means a Claim secured by a Lien on property in which the estate has an interest but only to the extent of the value of the Creditor's interest in the estate's interest in the property as of the Petition Date.

1.35  **"State of Michigan"** means the Michigan Department of Treasury, Michigan Unemployment Agency or any other governmental agencies of the State of Michigan.

1.36  **"Unsecured Claim"** means a Claim that is not a Secured Claim, an Administrative Claim nor a Priority Claim.

1.37  **"Unsecured Creditor"** shall mean any Creditor that holds an Unsecured Claim.

# ARTICLE II

## TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION
## OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN

For the purposes of approval and implementation of this Plan and the resultant reorganization of the Debtor, Administrative Creditors and Priority Creditors shall be paid on account of their respective Administrative and Priority Claims in accordance with the provisions set forth below:

2.1     **GROUP I**.  The Claims of Group I shall consist of all Administrative Expenses, except the claims of taxing authorities that are secured and that qualify as Administrative Expenses. The Allowed Claims of this Group shall be paid the full amount of their Claims on such date as may be mutually agreed upon between Debtor and the particular claimant, or, if no such date is agreed upon, the latest of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between Debtor and such Administrative Creditor, or (iii) the date on which the Bankruptcy Court enters its order, if necessary, approving Debtor's  payment of such expenses.  It is estimated that the only entities in this class shall be Robert Bassel, attorney for the Debtor, and Mueller Mayville, financial professionals for the Debtor.  It is estimated that the amount of his administrative expense shall be approximately $25,000 [$15,000 for Debtor's counsel and $10,000 for Debtor's financial professional].  The administrative expense for the State of Michigan is being addressed below in the "Group/Class  State of Michigan".

2.2     **GROUP II**.  The Claims of Group II shall consist of all Priority Creditors entitled to receive priority for their Allowed Claim under §507(a)(8) of the Bankruptcy Code.   Based upon a review of the Claims Register, it appears that there are two claims are in this Group, the Internal Revenue Service and the State of Michigan.  Their treatment follows in Article III

2.3     **GROUP III**.  The Claims of Group III shall consist of all other Priority Creditors entitled to receive priority for their Allowed Claim under §507(a) of the Bankruptcy Code other

7

than §507(a)(8).  Debtor does not believe that any such claimants exist. If they do exist, they shall be paid in equal monthly payments over 60 months from the Effective Date at 3% interest per annum.

**ARTICLE III**

**SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER PLAN AND THOSE IMPAIRED UNDER THE PLAN**

The Plan divides Claims and Interests into classes and treats them as follows, all of which are impaired unless noted (The proposed treatment for Groups referenced above as to State of Michigan and Internal Revenue Service are also described below for ease of reference).:

|  | **Treatment for Claims in this class** |
|---|---|
| Class  Level One #500874 | This class is made up of the secured claim of Level One or its assignee regarding #500874, which shall be paid in full, with a principal amount of approximately $996,000 at 2% interest, with a 240 month amortization, an 84 month term, for monthly payments of approximately $5,038.60 per month.   There will be a balloon payment of the balance due upon maturity (after 7 years). This class's lien shall remain until the claims in this class have been satisfied. Level One has a secured claim in the following assets: Debtor's interest in Southgate Hospitality, and Debtor's interest in Roseville Superior Hospitality, Inc., d/b/a Baymont Inn & Suites.  Debtors and Reorganized Debtors release any claims they have against Level One Bank with respect to #500874 and this claim (#11) is an Allowed Claim in the amount of $997,504.28.     Upon an uncured event of default as to Level One Bank regarding #500874, the automatic stay, to the extent still in place, is automatically terminated.  Debtors and the Reorganized Debtors shall have the greater of  (i) a seven day right to cure upon emailed notice of a specific event of default emailed to tgasso@wwnet.net and bbassel@gmail.com or (ii) the cure period and relevant terms provided in the loan documents between the parties. This class is impaired. |
| Class  general  unsecured claims | This class is made up the unsecured claims in the approximate amount of $1,782,901.78 other than guarantees on obligations that are currently being paid by the relevant obligors.    Tamer Gasso's obligation regarding P/P Properties, LLC and MAC's II, Inc. shall be treated as general unsecured claims, which are also Allowed Claims in the amount of $400,000.   This class also includes the unsecured claim of Talmer Bank  in the amount of  $220,805.76, the unsecured claim of PrivateBank in the amount of $227,098.73, the unsecured claim of The Huntington National Bank in the amount of $462,750.00, and the unsecured claim of Level One [claim no. 11] regarding Note #500672 ($300,000 Note) which is an Allowed Claim |

| | |
|---|---|
| | in the amount of $304,918.02. This class also includes the unsecured claim of PNC in the amount of $101,000, the unsecured claim of First Place Bank in the amount of $48,000, and the unsecured obligation of USBank in the amount of $18,329.27. Malik Abdulnoor and/or Arkan Jonna shall loan Debtors $140,000, which shall be distributed pro rata between these general unsecured claims on the Effective Date in full satisfaction of these claims. Jonna's and/or Abdulnoor's unsecured loan shall be subordinated to the other plan obligations, and shall be paid back over 60 months at 11% interest, for monthly payments of $3,043.94.<br><br>This class is impaired. |
| Class American Home Builders | This class, with respect to American Home Builder's secured claim in the amount of $3500 shall be paid over 70 monthly installments at 0% until paid in full. The members of this class shall retain their lien until the claims making up this class are paid in full. Payments shall be $50.00 per month.<br><br>This class is impaired. |
| Class of Equity Security Holders/Residual Interest | Retain Residual Interest in assets. The absolute priority rule is inapplicable. See e.g. In re Blair and Cole, Case No. 11-49823 (Bankr. E.D. Mich. January 9, 2012). |
| Class TCF | The guarantee obligations to TCF regarding Utica Hotel Suites and Airport Lodges shall be reaffirmed. |
| Class The Huntington National Bank as to Southgate Hospitality, Inc. | The guarantee obligations to The Huntington National Bank regarding Southgate Hospitality, Inc. shall be reaffirmed by execution and delivery of an amended and restated guaranty delivered on or before the Effective Date. This claim (#12) is an Allowed Claim in the amount of $2,389,574.61. |
| Class Akram Namou as to direct obligations | This class is made up of the secured claim of Akram Namou in the amount of $25,000 which shall be paid in full at 2% interest, with an 84 month term and an 84 month amortization for monthly payments of approximately $319.19 per month. This class's lien shall remain until the claims owed to Akram Namou have been satisfied. Though Akram Namou has filed a proof of claim in an amount of greater than $1,000,000, his claim shall be solely addressed in this "Class Akram Namou as to direct obligations", and "Class Akram Namou as to Contingent Obligations (Guarantees)".<br><br>This class is impaired. |
| Class Malik Abdulnoor as to direct obligations | This class is made up of the secured claim of Malik Abdulnoor in the amount of $50,000 which shall be paid in full at 2% interest, with an 84 month term and an 84 month amortization for monthly payments of approximately $638.37 per month. This class's lien shall remain until amounts owed to Malik Abdulnoor have been satisfied. Though Malik Abdulnoor has filed a proof of claim in an amount of greater than $1,000,000, his claim shall be solely addressed in this "Class Malik Abdulnoor as to direct obligations", and "Class Malik |

| | Abdulnoor as to Contingent Obligations (Guarantees)". |
|---|---|
| | This class is impaired. |
| Class Clarkston State Bank | The guarantee obligations to Clarkston State Bank regarding Baymont Roseville shall be reaffirmed. |
| Class First National Bank of Howell | The guarantee obligations to First National Bank of Howell regarding Homewood Brighton shall be reaffirmed. |
| Class MBC Credit | The guarantee obligations to MBC Credit regarding Canton Field and Holiday Inn Express Brighton shall be reaffirmed. |
| Class Sterling Bank | The guarantee obligations to Sterling Bank regarding Southfield Holiday Inn Express shall be reaffirmed. |
| Group/Class 2.2 State of Michigan | This Group/Class s made of the State of Michigan's priority and administrative expense claim of $74520.10 which shall be paid in full within 60 months of the Effective Date at 4.25% interest for monthly payments of $1380.82. <br><br> Upon the failure of the Debtor to make any payment due on a Secured or Priority Claim to the State of Michigan, which is not cured within 30 days of the mailing of the written notice of default by the State of Michigan, the State may exercise all rights and remedies applicable under non-bankruptcy law for the collection of its entire claim without seeking relief from this Court. <br><br> This class is impaired. |
| Group/Class 2.2 Internal Revenue Service | This class is made of the Internal Revenue Service's priority claim of $18759.13, which shall be paid in full within 60 months of the Effective Date at 3% interest for monthly payments of $337.08 per month. <br><br> Upon the failure of the Debtor to make any payment due on a Secured or Priority Claim to the IRS, which is not cured within 30 days of the mailing of the written notice of default by the IRS, the IRS may exercise all rights and remedies applicable under non-bankruptcy law for the collection of its entire claim without seeking relief from this Court. <br><br> This class is impaired. |
| Class repayment to Malik Abdulnoor regarding contributions/loans made post-Effective Date | This class is made up of the repayments of the contributions from Malik Abdulnoor to finance contributions into the hotels in which Debtor Thamer Gasso has an interest. It is anticipated that Malik Abdulnoor will not have to contribute any monies over the term of the Plan. To the extent that he makes any such loans, however, Mr. Abdulnoor will be repaid to the extent of available funds without interest. Mr. Abdulnoor shall have a security interest in all unencumbered assets of Debtor and a subordinate lien on all other assets to secure this obligation. This shall be treated as a loan and repaid as set forth herein. These funds shall come from Mr. Abdulnoor's personal funds. Mr. Abdulnoor has a net worth of |

10

| | |
|---|---|
| | several million dollars. The monies contributed by Malik Abdulnoor will be used for property improvement plans for the properties in which Debtor Thamer Gasso has an interest, to the extent necessary. |
| Class Akram Namou as to contingent obligations (guarantees) | The surety obligations to Akram Namou , for example regarding reimbursement and contribution, shall be reaffirmed. Though Akram Namou has filed a proof of claim in an amount of greater than $1,000,000, his claim shall be solely addressed in this "Class Akram Namou as to direct obligations", and "Class Akram Namou as to Contingent Obligations (Guarantees)". |
| Class Malik Abdulnoor as to contingent obligations (guarantees) | The surety obligations to Malik Abdulnoor, for example regarding reimbursement and contribution, shall be reaffirmed. Though Malik Abdulnoor has filed a proof of claim in an amount of greater than $1,000,000, his claim shall be solely addressed in this "Class Malik Abdulnoor as to direct obligations", and "Class Malik Abdulnoor as to Contingent Obligations (Guarantees)". |

## ARTICLE IV
## EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1 **Funding of the Plan:** Debtor(s) reasonably believes that his income and his family's contributions, along with a sale or refinancing of the assets to the extent necessary will generate sufficient funds to satisfy the obligations under the Plan. To the extent that additional funds are necessary, third parties may provide such funds to the Reorganized Debtor. Other sources of cash may be explored and utilized by the Reorganized Debtor to the extent that such cash infusions are necessary to meet the obligations of the Plan, including contributions by Malik Abdulnoor as set forth above.

4.2 **Refinancing:** If necessary, the Reorganized Debtor may, in its sole discretion, seek to obtain refinancing from either a lending institution or from other sources in an effort to satisfy the necessary cash payments described in this Plan. In the event that the Reorganized Debtor obtains such financing, it shall not obligate the Reorganized Debtor to accelerate any of the payments or obligations set forth in this Plan. There shall be no prepayment penalty regarding plan payments, unless specifically stated herein.

4.3 omitted

4.4     **Avoidance Actions and Causes of Action**:   On   the   Confirmation   Date,   the Avoidance Actions of the Debtor and causes of action shall vest in the Reorganized Debtor.  It does not appear, however, that any such Avoidance Actions exist.

4.5     **Pre-payment**:  The Reorganized Debtor may, but shall not be obligated to, pre-pay any of the claims at any time in its sole, absolute and unfettered discretion.   If the Reorganized Debtor elects to pre-pay any obligation, it shall <u>not</u> incur any pre-payment penalty, any such pre-payment penalty contained in any pre-petition contract, agreement or document shall not apply unless specified herein.

4.6     **omitted**

4.7     **Change of Address:** In order to ensure that it receives its distribution, each Creditor holding a Claim must advise the Reorganized Debtor of any change in address.  Absent any such notification, the Reorganized Debtor will send payments to the addressed listed on the Matrix on file with the Bankruptcy Court

**ARTICLE V**

<u>**EFFECT OF CONFIRMATION**</u>

5.1     **Discharge:**  Upon the final payment under this Plan,  the Claims of all Creditors against the Debtor shall be discharged and released, which shall constitute a full, total and complete settlement with said Creditors and Interest Holders. Final payment shall also act as a merger and relinquishment of any and all Claims that Creditors have or may have against the Debtor as provided in the treatment of the Creditors in Articles II and III.  The Debtor shall receive a discharge as contemplated by 11 U.S.C. §§524 and 1141 upon consummation of the Plan, such discharge being as broad and all-inclusive as provided by law.  The liens or security interests of any creditors will be deemed discharged upon confirmation of the Debtor's plan other than as specifically retained in this plan.

5.2     [omitted]

5.3 **Financing and Capital Contributions:** There shall be no prohibition against the Reorganized Debtor obtaining any financing from any lender willing to provide any financing or selling assets. The obtaining of financing shall not obligate the Reorganized Debtor to make any earlier payments or distribution except as may be provided in the Plan.

5.4 In the event of a conversion of the Case to a case under Chapter 7 of the Bankruptcy Code, all property of the Debtor, the debtor-in-possession or the Reorganized Debtor, including all property that will revest in the Reorganized Debtor pursuant to confirmation of the Plan and all property acquired by the Reorganized Debtor subsequent to confirmation of the Plan, shall be property of the relevant Chapter 7 estate.

## ARTICLE VI

## MODIFICATION OF THE PLAN

6.1 Debtor(s) may, from time to time, propose amendments or modifications of this Plan prior to its confirmation, without leave of the Court. After confirmation, the Debtor or Reorganized Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected Creditor(s) and any committee appointed by the Office of the U.S. Trustee only, remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Order of Confirmation or otherwise modify the Plan.

6.2 If the Bankruptcy Court determines that the modification affects all the Creditors, or if the Debtor proposes a material modification affecting all Creditors, then such modification shall be governed by §1127 of the Bankruptcy Code and the Plan.

## ARTICLE VII

## JURISDICTION OF THE COURT

This Court shall retain jurisdiction in this matter until the Plan has been fully consummated including, but not limited to, the following reasons and purposes:

A.     The classification of the Claim of any Creditor and the re-examination of Claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors.  The failure by the Debtor or the Reorganized Debtor to object to, or to examine any Claim for the purposes of voting, shall not be deemed to be a waiver of any right to object to, or reexamine the Claim in whole or in part.

B.     The determination of all questions and disputes regarding title to the assets of the estate or Debtor, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor or the Reorganized Debtor or any other party.  This shall include, but not be limited to, any cause of action, avoiding power or right of the Debtor or the Reorganized Debtor to recover assets pursuant to the provisions of the Bankruptcy Code, including, without limitation, Avoidance Actions and claims initiated under §§506 and 510 of the Bankruptcy Code.

C.     The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan.

D.     The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and as provided as in the Plan.

E.     The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in support of confirmation of this Plan.

F.     The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtor, the Reorganized Debtor or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary, including without limitation, injunctions to enforce releases or forbearance in favor of guarantors, which would assist the Reorganized Debtor to accomplish its obligations under the Plan.

G. The review and approval of all professional fee applications for services rendered prior to the Confirmation Date and the review of any professional fees for services rendered in connection with the Plan after the Confirmation Date, to the extent that the Debtor or the Reorganized Debtor dispute all or a portion thereof.

H. The entry of an order concluding and terminating this Case.

## ARTICLE VIII

## TITLE TO PROPERTY

8.1 Title to the property of the Debtor shall vest in the Reorganized Debtor upon the final payment to be made under the Plan, and the automatic stay shall remain in effect until that time. Notwithstanding this, the Debtor(s) shall be discharged from its status as Debtor and the affairs and business of the Reorganized Debtor shall thereafter be conducted without Court involvement except as may be governed by the Plan.

## ARTICLE IX

## UNITED STATES TRUSTEE FEES

9.1 The Reorganized Debtors shall continue to remit to the office of the United States Trustee all appropriate post confirmation monthly reports/affidavits for all relevant time periods and shall continue to remit quarterly fee payments in full based on all disbursements for the relevant period(s) until the case is closed by order of the court. To the extent any monthly reports/affidavits are not timely provided or fees are not paid in full, this case may be re-opened by the office of the United States Trustee to file such Motions or take such action as appropriate to be provided with such reports and paid any fees owed or due.

## ARTICLE X

## EXECUTORY CONTRACTS

10.1 Unless addressed in Article III of this Plan or otherwise assumed or rejected by Final Order of the Bankruptcy Court, all executory contracts of the Debtor either (i) not expressly rejected or (ii) which are not within thirty (30) days after the Confirmation Date the subject of pending

applications to reject and disaffirm, shall be deemed assumed. Within thirty (30) days after the Confirmation Date, the Reorganized Debtor shall be allowed to file a Notice of Rejection of Executory Contract (the "Notice") with the Bankruptcy Court and the executory contract which is the subject thereof shall thereupon be rejected. In connection with any executory contracts that are assumed, absent a provision to the contrary, the Debtor shall be permitted to pay Claims arising from executory contracts that existed as of the Petition Date in 36 equal, monthly installments beginning one month after the Effective Date.

10.2    Any Creditor who has a Claim as a result of such rejection shall have thirty (30) days after receipt of the Notice to file a Proof of Claim, failing which such Claim shall be disallowed in its entirety. The Notice shall contain a provision informing any potential creditor of this requirement and shall be served on such potential creditor(s).

## ARTICLE XI

## OBJECTIONS TO CLAIMS

11.1.    Debtor(s) and/or the Reorganized Debtor(s) and parties in interest may object to the allowance of any Claim, whether listed on the schedules filed by the Debtor or filed by any entity. No time limit for such objections is being created by this Plan

## ARTICLE XII

[omitted]

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1.    Notwithstanding anything in this Plan to the contrary, neither Debtor nor the Reorganized Debtor shall be obligated to make any payments towards any Contested Claim.

13.2.    The Debtor, the Reorganized Debtor and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This shall include without

limitation any execution by the Debtor of UCC financing statements and the execution by creditors of any UCC termination and mortgage releases and termination.

13.3.    This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties in interest and their respective successors and assigns.

13.4    When the Debtor or the Reorganized Debtor has made all payments and obligations required under this Plan all restrictions, negative covenants and other limitations on the Debtor's operations provided herein or in the Confirmation Order shall terminate.

13.5    The Reorganized Debtor shall have the right to commence, continue, amend or compromise all causes of actions available to the Debtor, the bankruptcy estate(s) or the debtor(s) in possession, whether or not those causes of action were the subject of a suit as of the Confirmation Date, including but not limited to actions to collect receivables owed to the Debtor. The Reorganized Debtor specifically reserves its right to commence, continue, amend or compromise all causes of action, whether or not described in the Disclosure Statement.

13.6    Upon the failure of the Debtor or Reorganized Debtor to make any payment due on a secured or priority tax claim which is not cured within fifteen days of the mailing of a written notice of default by the creditor (unless otherwise provided in this Plan), such creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire claim and/or seek appropriate relief in this Court.

13.7    For purposes of clarification, the Reorganized Debtor shall have the right to challenge any Claim through the claims objection process set forth in this Plan, which challenge may include but is not be limited to a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax.  The right to challenge these claims shall include, without limitation, an objection to the assessment of the Debtor's property that may or may not have been made by the respective taxing authority.

## II. DESCRIPTION OF DEBTOR

Thamer and Lamia Gasso are the instant chapter 11 debtors, 13-31953.

### A.     The Debtor-In-Possession

Thamer and Lamia Gasso filed a chapter 11 petition on 5 31 2013 at case no. 13-31953. This case was assigned to the Honorable Daniel Opperman.

### B.     Debtor's Principals and Management

*Background*

Thamer Gasso is 55 years old.  He has taken college courses, and has been in the hospitality business since 1995, and has owned convenience stores since 1980.  Lamia Gasso is 49 years old, has a high school degree, and has been a homemaker for their 6 children.

Mr. Gasso has an interest in several businesses as follows:

| Entity | Percentage interest | Estimated Value of Debtors' Interest[1] | Face Amount Note payable based on percentage interest multiplied by entry for "note payable officer" on First Quarter 2013 quarterly statement, without taking into account any rights of offset or | |
|---|---|---|---|---|
| | | | | |

---

[1] Numbers are approximate, valuation is based on Debtor's estimation based on his experience in hotel industry, most values are based upon 2 times yearly gross revenues.  Though Debtor has not yet performed a thorough analysis of its assets and reserves its rights to amend these figures, Debtor believes that these numbers are accurate.

[2] Upon information and belief, all of the notes payable are subordinated per agreements

18

| | | | collectability[2] | |
|---|---|---|---|---|
| P/P Center [owns strip center] | 50% | 0 | | |
| Macs II, Inc. (party store) | 33% | 20000 | | |
| Holiday Inn Brighton Lodging Enterprise, Inc. | 5.5% | 39875 | 38933.29 | |
| Canton Fields, Inc. | 6.25% | 8125 | 133614 | |
| Homewood Brighton | 15% | 37500 | 804313.953 | |
| Holiday Inn Southgate, Inc. | 18.75% | 10000 | 270102.375 | |
| Baymont Inn owned by Roseville Hospitality, Inc. | 33% | 13333.33 | 253106.37 | |
| Utica Hotel Suite, Inc. Staybridge | 20% | 30000 | 0 | |
| (Quality Inn) Airport Lodges, Inc. | 25% | 0 | 44408.25 | |
| Holiday Inn Muskegon | 10% [entity's assets sold 6.2013] | 0 | 170196.70 | |
| Holiday Inn Express SOUTHFIELD Hotel Suite, Inc. | 15% | 75000 | 230378.85 | |
| Total | | 233833.33 | 1945053.788 | |

Upon confirmation, he will retain his position.

*Compensation*

Since the Petition Date, Mr. Gasso has received the above payments. It is contemplated that postpetition, he will receive distributions as set forth in the accompanying projections.

*Legal Relationships*

1.      On or about 6.19.2013, an entity in which Debtor held an interest, Muskegon Nights, Inc., dba Holiday Inn Muskegon sold substantially all of its assets other than its cash and accounts. Mr. Gasso was a minority member, owning 10% of the corporation's stock.

2.      Debtor received no distribution from the sale proceeds because the amounts that were owed to Debtor were less than what Debtor owed to the entity based on, inter alia, his failure to make prior loans/contributions to the entity (the "Muskegon Nights Transaction").

3.      Debtor Thamer Gasso has a 10% interest in Muskegon Nights as indicated by the tax returns showing the respective interests of the various owners in the K1 statements:

4.      The sale by Muskegon Nights of substantially all of its assets closed on or about 6.19.2013.

5.      The closing statements follow with respect to the sale of the assets by Muskegon Nights on 6.19.1013:

Escrow Officer: Shar Shineldecker

Title No.: 108436WMS
Date: 06/19/2013

SELLER'S SETTLEMENT STATEMENT

Seller: Muskegon Nights, Inc., a Michigan Corporation
24725 Greenfield
Southfield, MI 48075

Purchaser: Parkland Acquisition, LLC, a Michigan limited liability company
940 Monroe NW, Suite 155
Grand Rapids, MI 49503

Parkland Hudsonville, LLC, a Michigan limited liability company
940 Monroe NW, Suite 155
Grand Rapids, MI 49503

Parkland Acquisition Two, LLC, a Michigan limited liability company

Property Address: 939 3rd Street and 955 3rd Street and 428 W. Western
Muskegon, MI 49440

|  | Debits | Credits |
|---|---|---|
| Hotel (939 3rd) 1/3 and 2/3 |  | $3,350,000.00 |
| Parking Ramp (955 3rd) 1/3 and 2/3 |  | $400,000.00 |
| 428 W Western (Parkland Hudsonville 100%) |  | $1,702,250.00 |
| Personal Property (Parkland Acq. Two) |  | $80,000.00 |
| Fifth Third Bank to Fifth Third Bank | $2,724,312.40 |  |
| First Community Bank to First Community Bank | $2,005,401.75 |  |
| Tax Proration 1-1 to 6-18 (939 3rd) | $45,488.04 |  |
| Tax Proration 1-1 to 6-18 (955 3rd) | $4,791.15 |  |
| Tax Proration 1-1 to 6-18 428 W. Western | $932.88 |  |
| Tax Proration 1-1 to 6-18 Personal Prop. | $7,740.70 |  |
| Settlement or closing fee to Transnation Title Agency of Michigan | $750.00 |  |
| Title insurance to Transnation Title Agency of Michigan | $5,220.00 |  |
| Wire Transfer Fees to Transnation Title Agency of Michigan | $50.00 |  |
| Title Insurance on Parcing Ramp to Transnation Title Agency of Michigan | $1,800.00 |  |
| Title Insurance on Parcel 4 - Parking Lo to Transnation Title Agency of Michigan | $717.25 |  |
| City/county tax/stamps to Muskegon County Register of Deeds | $5,997.75 |  |
| State tax/stamps to Muskegon County Register of Deeds | $40,893.75 |  |
| Deed from Desiree to Muskegon County Register of Deeds | $17.00 |  |
| Survey to Nederveld Associates, Inc. | $2,500.00 |  |
| Franchise Fee to InterContinental Hotel Group | $52,250.00 |  |
| Sub-totals | $4,898,862.17 | $5,532,250.00 |
| Balance Due To Seller |  | $633,387.83 |

The above figures do not include sales or use taxes on personal property.
APPROVED AND ACCEPTED

Muskegon Nights, Inc., a Michigan Corporation

By Akram G. Namou, President

Broker:

By:

| | | PURCHASER'S SETTLEMENT STATEMENT |
|---|---|---|
| **SELLER:** Muskegon Nights, Inc. | | |
| Address: 939 Third Street | TITLE NO: | 16993183 |
| Address: Muskegon, MI 49440 | | |
| | CLOSING OFFICER: | |
| **PURCHASER:** | | |
| T10 UNISON SITE MANAGEMENT LLC | CLOSING DATE: | June 18, 2013 |
| 110 Thomas Johnson Drive, Suite 110 | | |
| Frederick, MD 21702 | PROPERTY DESCRIPTION: 939 Third Street Muskegon, MI 49440 | |
| | UNISON SITE: | 470409 |

30 DAYS PER MONTH

| DESCRIPTION | DEBIT | CREDIT |
|---|---|---|
| PURCHASE PRICE | $500,000.00 | |
| | | |
| RENT PRORATIONS | | |
| | | |
| | | |
| AT&T Wireless (06/20/13 - 09/30/13) | | $9,061.74 |
| $2,676.00   PER MONTH | | |
| | | |
| | | |
| Metro PCS (06/20/13 - 07/31/13) | | $2,546.38 |
| $1,828.95   PER MONTH | | |
| | | |
| | | |
| Nextel Communications (06/20/13 - 09/30/13) | | $5,030.99 |
| $1,485.69   PER MONTH | | |
| | | |
| LEGAL FEES TO LOCKE LORD | | |
| subtotal | $500,000.00 | $16,639.11 |
| | | |
| TITLE INSURANCE PREMIUM - LENDER'S | $948.76 | |
| SEARCH AND EXAM AND MUNICIPAL SEARCHES | | |
| SETTLEMENT FEE | | |
| RECORDING FEE - EASEMENT & MTG | $192.00 | |
| | | |
| FORGIVEN PRORATED RENT | $16,639.11 | |
| TOTAL | $517,779.87 | |
| | | |
| DUE TO/(FROM) PURCHASER | $501,140.76 | |

PURCHASER:
T10 UNISON SITE MANAGEMENT LLC
SIGN HERE:
JAMES R. HOLMES
AUTHORIZED SIGNATORY

The Seller's and Purchaser's/Borrower's signatures hereon acknowledge their approval and signify their understanding that the prorations are based on figures for the preceding year, figures supplied by others, or estimated for the current year. In the event of any change for the current year, all necessary adjustments will be made between Purchaser/Borrower and Seller directly. Purchaser/Borrower and Seller further agree that the prorations contained herein shall be recalculated as to the actual day of closing without the need for reexecution of the Settlement Statement herein and that the balance due to Seller and proceeds due from Purchaser shall be adjusted accordingly.

6.    Accordingly, the net amounts paid to Muskegon Nights were $633,387.83 plus $501,140.76 or a total of $1,134,528.59 [the "Gross Sale Proceeds"].  Muskegon Nights held back approximately $389,878.38, for the payment of vendors and other creditors of Muskegon Nights, leaving net proceeds of approximately $744,650.21 [the "Net Sale Proceeds"].

7.     On 6.19.2013, the date that Muskegon Nights sold substantially all of its assets other than cash and accounts, there was $136,303.59 in cash and accounts.

8.     Accordingly, the amount for distribution to owners would have been the Net Sale Proceeds of $744,650.21 plus the cash of $136,303.59 or $880,953.80 [the "Funds Available for Distribution"].

9.      Debtor was not entitled to any distribution, however, because of the monies he owed the corporation.

10.     Specifically, the internal books and records of Muskegon Nights indicate the following inability by Debtor Thamer Gasso to make loans/contributions to Muskegon Nights in the amount of $70,000 as of the Petition Date.

THAMER GASSO

50,000.00   Loan To Tom Gasso Florida Hwy 6
           As of 1-13-2013   Tom Gasso
10,000.00  Loan To Tom Gasso 2-2-2013   Tom Gasso 2-2-
60,000.00

5,000.00   Loan To Tom   3-3-2013   Tom Gasso
5,000.00   Loan To Tom   4-3-2013   Tom Gasso

     11.     Furthermore, Thamer Gasso was loaned funds by Select Bank. Muskegon Nights granted Select Bank a second mortgage on the hotel to secure this loan. The amount loaned to Thamer Gasso was approximately $250,000, which was refinanced by Select One in 2011 for $249,999.90. The Select One obligation was later assigned to First Community Bank. The note provides:



| BORROWER NAME AND ADDRESS | LENDER NAME AND ADDRESS | LOAN DESCRIPTION |
| --- | --- | --- |
| THAMER S. GASSO | SELECT BANK | LDP:                    RLI |
| 6198 WINCLIFF DRIVE | 60 MONROE CENTER NW | Number 30037802 |
| WEST BLOOMFIELD, MI 48322 | GRAND RAPIDS, MI 49503 | Amount $ 249,999.90 |
| | | Date 09-30-2011 |
| | | REFINANCE #      30034011 |

☐   Refer to the attached Signature Addendum, incorporated herein, for additional Borrowers and their signatures.

**COMMERCIAL PROMISSORY NOTE**

DATE. The date of this Promissory Note (Note) is _09-30-2011_

GOVERNING AGREEMENT. This Note is further governed by the Commercial Loan Agreement between Lender and Borrower dated _09-30-2011_ , as modified, amended, or supplemented. All definitions of terms in the Commercial Loan Agreement apply to this Note as well. Upon execution of this Note, Borrower represents that Borrower has reviewed and is in compliance with all Loan Documents and the Commercial Loan Agreement.

PROMISE TO PAY. For value received, Borrower promises to pay Lender or Lender's order, at Lender's address, ☒ $ _249,999.90_ (Principal).

☐ $ _____ (Principal) or the Borrowing Base, whichever is less.

☒   Single Advance. Borrower will receive all of this Principal in one advance. No additional advances are contemplated under this Note.

☐   Multiple Advances. The Principal amount stated above is the maximum amount of Principal that Borrower may borrow under this Note. On _____

Borrower will receive $_____ and future advances are contemplated. The conditions for future advances are stated in the Commercial Loan Agreement.

INTEREST. Borrower agrees to pay interest on the outstanding Principal balance of this Note at the rate of _5.750_ percent per year until _10-03-2014_ .

Interest accrues on a _ACTUAL/360_ basis. For interest calculation, the accrual method will determine the number of days in a year.

     12.     On or about the date of the sale, 6.19.2013, the amount owed to Select One's assignee, First Community Bank, was $226,685.84 as indicated below ("the $226,685.84 Select One Obligation"):

13-31953-dof    Doc 87    Filed 02/19/14    Entered 02/19/14 21:48:51    Page 25 of 37

```
FIRST COMMUNITY BANK                                    PAGE    1
200 EAST MAIN STREET
HARBOR SPRINGS, MI  49740-0000


                    B U S I N E S S   L O A N        06/18/13
                    DETAILED BILLING STATEMENT       STATEMENT DATE


                                   ACCOUNT NUMBER    000030037802

                                   PAYMENT DUE DATE    07/03/13

                                   PAYMENT AMOUNT       2,419.48

          THAMER S  GASSO                TOTAL DUE       5,201.87
          6198 WINCLIFF DR
          WEST BLOOMFIELD MI   48322



** CUT HERE **        *** PLEASE RETURN THIS PORTION WITH YOUR PAYMENT ***
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FIRST COMMUNITY BANK                      ACCOUNT NUMBER   000030037802

                           MONETARY TRANSACTIONS
  EFFECTIVE     POSTING    TRAN        TRANSACTION   ********** POSTING **********
    DATE          DATE     CODE          AMOUNT      DESCRIPTION        AMOUNT
  06/13/13      06/13/13   AC58           120.97     LATE FEE ASSESSED INCREASE
                                                     LOAN BALANCE      226,685.84
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

13.     On 6.19.2013, Muskegon Nights paid off the $226,685.84  Select One Obligation because it was required to in order to release the mortgage that Select One's assignee had on the property.  The  amounts owed to Muskegon Nights by Thamer Gasso thus consisted of the $226,685.84 reimbursement obligation that had accrued, plus the $70,000 that was owed based on an inability to make prior loans/contributions for a total of $296,685.84 [$70,000 plus $226,685.84].

14.     As stated above, the Funds Available for Distribution were $880,953.80 and Mr. Gasso's 10% share would have been $88,095.38  Mr. Gasso did not receive his 10% share, however, because Muskegon Nights withheld his distribution in light of the monies he owed the company in the amount  of $296,685.84.  Under principles of recoupment, etc., Muskegon Nights had a right to reconcile the amounts owed to Mr. Gasso from what was owed by Mr. Gasso. *See e.g. In re Bob Brest Buick, Inc.*, 136 B.R. 322, 323 (Bankr. D. Me. 1991.

15.     The automatic stay did not apply to the transaction because it was Muskegon Nights, Inc., and not Debtor that sold substantially all of its assets.  Debtor was only a 10% minority shareholder of Muskegon Nights.  Furthermore, the automatic stay does not apply to recoupment by a third party, or to a holding of funds.  See above.

Debtor has filed a motion regarding this transaction requesting a determination that the automatic stay did not apply to the transaction, to which no party has objected.

### C.     Description of Debtor's Business and Causes for Chapter 11 Filing

Debtor's chapter 11 filing was caused by the economic downturn in the economy and its

effect on the hospitality industry.  Furthermore, several creditors had judgments against Debtor and

one had garnished over $12,000 in a bank account prepetition, which was returned by the judgment creditor.

### III.    POST-PETITION EVENTS OF SIGNIFICANCE

**A.    Post-Petition Transfers Outside the Ordinary Course of Business**

Debtor has made no post-petition transfers outside the ordinary course of business.  See above regarding legal relationships with respect to the sale of assets by an entity in which Debtor has a 10% interest, Muskegon Nights, Inc.

**B.    Chapter 11 Events**

This Disclosure Statement is not designed to provide a full, detailed description of the motions filed and orders entered or other developments in the bankruptcy proceeding.  Further, the Disclosure Statement does not address every motion filed or order entered in the proceeding. Rather, the Disclosure Statement merely provides a summary of the major motions filed or orders entered.  Creditors are urged to review the bankruptcy court docket, which lists every document filed in the bankruptcy case, and the bankruptcy court file, which contains all of the filed documents.

*Cash Collateral and Adequate Protection*

n.a.

*Motions for Relief from Stay*

n.a.

Motions regarding executory contracts

n.a.

The Plan and Disclosure Statement

Debtor filed its Combined Disclosure Statement and Plan of Reorganization.  The Debtor believes that its Plan of Reorganization is feasible, as demonstrated by the projections.

The projections assume that the current economic conditions will continue for the term of the plan. Accordingly, the Debtor is extremely confident in its ability to meet the projections and satisfy claims under the Plan.

### C.    Pending and Contemplated Litigation Involving Debtor

There is no pending or contemplated litigation involving the Debtor

### D.    Insider Transactions

There have been no insider transactions.

### IV.    ASSETS AND LIABILITIES

### A.    Liquidation Analysis

Debtor(s)' Liquidation Analysis accompanies this Plan.

In the event that the Plan is not accepted by the Creditors or is not otherwise confirmed by the Bankruptcy Court, the Debtor believes that its assets would be liquidated either:

1.    Pursuant to a plan of liquidation under Chapter 11 of the Code; or,

2.    In a straight bankruptcy liquidation under Chapter 7 of the Code.

Under either alternative, the operations of the Debtor would cease, as Debtor would only realize the liquidation value of its assets. Debtor is confident that in a liquidation scenario, where the Debtor will be unable to generate any income going forward, unsecured creditors will not do better in a chapter 7 liquidation than in a chapter 11 bankruptcy.

There are secured claims equal to the value of the collateral, and unsecured claims of over $35,000,000 taking into account guaranty obligations, and over $1,782,901.78 not taking those guaranty obligations into account. Debtor believes that its Plan is fair and equitable to creditors and it is in creditor's best interest to vote in favor of the Debtor's Plan.

### B.    Risks, Conditions and Assumptions In Liquidation Analysis

Debtor has used fair market value and forced sale/auction value to determine the value of its assets. The risks, conditions and assumptions are outlined in the Liquidation Analysis. Debtor asserts that under any such scenario, unsecured creditors will receive no payments on their claims.

### C. Causes of Action

At this time, Debtor(s) is planning to file no lawsuits against any entities.

### D. Priority and Secured Claims and Administrative Expenses

Debtor has priority and secured claims of approximately the value of the collateral. It is estimated that the only unpaid administrative expense at the time of confirmation shall be Robert Bassel, attorney for the Debtor, and Mueller Mayville, financial professional for the Debtor. It is estimated that the amount of Bassel's administrative expense shall be approximately $15,000, and Mueller Mayville's shall be approximately $10,000. Any administrative expenses of the State of Michigan and the Internal Revenue Service shall be addressed in the Debtor's plan classes and groups set forth above. The State of Michigan has asserted a proof of claim for an administrative expense of $66,290 which is addressed above in Articles II and III of the plan.

### E. Unsecured Claims

It appears that there are approximately 1,782,901.78 in unsecured claims against Debtor.

### F. Guaranteed Debt

Mr. Gasso is a guarantor of several loans to entities in which he has an interest, which include the following:

| |
|---|
| The guarantee obligations to TCF regarding Utica Hotel Suites and Airport Lodges |
| The guarantee obligations to Huntington National Bank regarding Southgate Hospitality, Inc. |
| The guarantee obligations to Clarkston State Bank regarding Baymont Roseville |
| The guarantee obligations to First National Bank of Howell regarding Homewood Brighton |
| The guarantee obligations to MBC Credit regarding Canton Field and Holiday Inn Express Brighton |
| The guarantee obligations to Sterling Bank regarding Southfield Holiday Inn Express |
| The guarantee obligations to Level One Bank regarding Southfield Hospitality, P/P Center and Macs II, Inc. (party store) |

### VI. IMPLEMENTATION OF PLAN

## A. Summary of Classes and Groups under Plan

## SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER PLAN AND THOSE IMPAIRED UNDER THE PLAN

The Plan divides Claims and Interests into classes and treats them as follows, all of which are impaired unless noted (The proposed treatment for Groups referenced above as to State of Michigan and Internal Revenue Service are also described below for ease of reference).:

| | Treatment for Claims in this class |
|---|---|
| Class Level One #500874 | This class is made up of the secured claim of Level One or its assignee regarding #500874, which shall be paid in full, with a principal amount of approximately $996,000 at 2% interest, with a 240 month amortization, an 84 month term, for monthly payments of approximately $5,038.60 per month.   There will be a balloon payment of the balance due upon maturity (after 7 years). This class's lien shall remain until the claims in this class have been satisfied. Level One has a secured claim in the following assets: Debtor's interest in Southgate Hospitality, and Debtor's interest in Roseville Superior Hospitality, Inc., d/b/a Baymont Inn & Suites.  Debtors and Reorganized Debtors release any claims they have against Level One Bank with respect to #500874 and this claim (#11) is an Allowed Claim in the amount of $997,504.28.     Upon an uncured event of default as to Level One Bank regarding #500874, the automatic stay, to the extent still in place, is automatically terminated.  Debtors and the Reorganized Debtors shall have the greater of  (i) a seven day right to cure upon emailed notice of a specific event of default emailed to tgasso@wwnet.net and bbassel@gmail.com or (ii) the cure period and relevant terms provided in the loan documents between the parties. This class is impaired. |
| Class general unsecured claims | This class is made up the unsecured claims in the approximate amount of $1,782,901.78 other than guarantees on obligations that are currently being paid by the relevant obligors.    Tamer Gasso's obligation regarding P/P Properties, LLC and MAC's II, Inc. shall be treated as general unsecured claims, which are also Allowed Claims in the amount of $400,000.   This class also includes the unsecured claim of Talmer Bank  in the amount of  $220,805.76, the unsecured claim of PrivateBank in the amount of $227,098.73, the unsecured claim of The Huntington National Bank in the amount of $462,750.00, and the unsecured claim of Level One [claim no. 11] regarding Note #500672 ($300,000 Note) which is an Allowed Claim in the amount of $304,918.02.  This class also includes the unsecured claim of PNC in the amount of $101,000, the unsecured claim of First Place Bank in the amount of $48,000, and the unsecured obligation of USBank in the amount of $18,329.27.  Malik Abdulnoor and/or Arkan Jonna shall loan Debtors $140,000, which shall be distributed pro rata between these general unsecured claims |

| | |
|---|---|
| | on the Effective Date in full satisfaction of these claims. Jonna's and/or Abdulnoor's unsecured loan shall be subordinated to the other plan obligations, and shall be paid back over 60 months at 11% interest, for monthly payments of $3,043.94.<br><br>This class is impaired. |
| Class American Home Builders | This class, with respect to American Home Builder's secured claim in the amount of $3500 shall be paid over 70 monthly installments at 0% until paid in full.  The members of this class shall retain their lien until the claims making up this class are paid in full.  Payments shall be $50.00 per month.<br><br>This class is impaired. |
| Class of Equity Security Holders/Residual Interest | Retain Residual Interest in assets.  The absolute priority rule is inapplicable.  See e.g. In re Blair and Cole, Case No. 11-49823 (Bankr. E.D. Mich. January 9, 2012). |
| Class TCF | The guarantee obligations to TCF regarding Utica Hotel Suites and Airport Lodges shall be reaffirmed. |
| Class The Huntington National Bank as to Southgate Hospitality, Inc. | The guarantee obligations to The Huntington National Bank regarding Southgate Hospitality, Inc. shall be reaffirmed by execution and delivery of an amended and restated guaranty delivered on or before the Effective Date.  This claim (#12) is an Allowed Claim in the amount of $2,389,574.61. |
| Class Akram Namou as to direct obligations | This class is made up of the secured claim of Akram Namou  in the amount of  $25,000 which shall be paid in full at 2% interest, with an 84 month term and an 84 month amortization  for monthly payments of approximately $319.19 per month.   This class's lien shall remain until the claims owed to Akram Namou have been satisfied.  Though Akram Namou has filed a proof of claim in an amount of greater than $1,000,000, his claim shall be solely addressed in this "Class Akram Namou as to direct obligations", and "Class Akram Namou as to Contingent Obligations (Guarantees)".<br><br>This class is impaired. |
| Class Malik Abdulnoor as to direct obligations | This class is made up of the secured claim of Malik Abdulnoor  in the amount of  $50,000 which shall be paid in full at 2% interest, with an 84 month term and an 84 month amortization  for monthly payments of approximately $638.37 per month.   This class's lien shall remain until amounts owed to Malik Abdulnoor have been satisfied. Though Malik Abdulnoor has filed a proof of claim in an amount of greater than $1,000,000, his claim shall be solely addressed in this "Class Malik Abdulnoor as to direct obligations", and "Class Malik Abdulnoor as to Contingent Obligations (Guarantees)".<br><br>This class is impaired. |
| Class Clarkston State Bank | The guarantee obligations to Clarkston State Bank   regarding Baymont Roseville shall be reaffirmed. |
| Class First National Bank | The guarantee obligations to First National Bank of Howell regarding |

| | |
|---|---|
| of Howell | Homewood Brighton shall be reaffirmed. |
| Class MBC Credit | The guarantee obligations to MBC Credit regarding Canton Field and Holiday Inn Express Brighton shall be reaffirmed. |
| Class Sterling Bank | The guarantee obligations to Sterling Bank regarding Southfield Holiday Inn Express shall be reaffirmed. |
| Group/Class 2.2 State of Michigan | This Group/Class s made of the State of Michigan's priority and administrative expense claim of $74520.10 which shall be paid in full within 60 months of the Effective Date at 4.25% interest for monthly payments of $1380.82.<br><br>Upon the failure of the Debtor to make any payment due on a Secured or Priority Claim to the State of Michigan, which is not cured within 30 days of the mailing of the written notice of default by the State of Michigan, the State may exercise all rights and remedies applicable under non-bankruptcy law for the collection of its entire claim without seeking relief from this Court.<br><br>This class is impaired. |
| Group/Class 2.2 Internal Revenue Service | This class is made of the Internal Revenue Service's priority claim of $18759.13, which shall be paid in full within 60 months of the Effective Date at 3% interest for monthly payments of $337.08 per month.<br><br>Upon the failure of the Debtor to make any payment due on a Secured or Priority Claim to the IRS, which is not cured within 30 days of the mailing of the written notice of default by the IRS, the IRS may exercise all rights and remedies applicable under non-bankruptcy law for the collection of its entire claim without seeking relief from this Court.<br><br>This class is impaired. |
| Class repayment to Malik Abdulnoor regarding contributions/loans made post-Effective Date | This class is made up of the repayments of the contributions from Malik Abdulnoor to finance contributions into the hotels in which Debtor Thamer Gasso has an interest. It is anticipated that Malik Abdulnoor will not have to contribute any monies over the term of the Plan. To the extent that he makes any such loans, however, Mr. Abdulnoor will be repaid to the extent of available funds without interest. Mr. Abdulnoor shall have a security interest in all unencumbered assets of Debtor and a subordinate lien on all other assets to secure this obligation. This shall be treated as a loan and repaid as set forth herein. These funds shall come from Mr. Abdulnoor's personal funds. Mr. Abdulnoor has a net worth of several million dollars. The monies contributed by Malik Abdulnoor will be used for property improvement plans for the properties in which Debtor Thamer Gasso has an interest, to the extent necessary. |
| Class Akram Namou as to contingent obligations | The surety obligations to Akram Namou , for example regarding reimbursement and contribution, shall be reaffirmed. Though Akram |

| | |
|---|---|
| (guarantees) | Namou has filed a proof of claim in an amount of greater than $1,000,000, his claim shall be solely addressed in this "Class Akram Namou as to direct obligations", and "Class Akram Namou as to Contingent Obligations (Guarantees)". |
| Class Malik Abdulnoor as to contingent obligations (guarantees) | The surety obligations to Malik Abdulnoor, for example regarding reimbursement and contribution, shall be reaffirmed. Though Malik Abdulnoor has filed a proof of claim in an amount of greater than $1,000,000, his claim shall be solely addressed in this "Class Malik Abdulnoor as to direct obligations", and "Class Malik Abdulnoor as to Contingent Obligations (Guarantees)". |

### B.  Financial Information

The information contained in this Disclosure Statement has not been subject to a certified audit.  The information has been compiled from the records of Debtor and is true and accurate to the best of Debtor's knowledge, information and belief.  The information is also based on an income projections performed by Debtor.

### *Projections*

Attached to this Disclosure Statement are cash flow projections compiled by Debtor which cover the time period in which Debtor proposes to effectuate payments under the Plan.  Since the cash flow projections are based on estimates and assumptions which are inherently subject to uncertainty and variation depending upon evolving events, the Debtor does not warrant that the results reflected in the cash flow projections will be achieved.

These cash flow projections indicate that Debtor will generate a positive cash flow going forward sufficient to meet all of its obligations to creditors under the Plan (where the pro formas indicate operating at a deficit, Debtor will receive funds from third parties including family members and from the sale or refinancing of assets or contributions from Malik Abdulnoor).  To the extent required, these contributions from Mr. Abdulnoor would satisfy any new value obligation. The projections give an example of the payments required to be made under the Plan and demonstrate how the distributions to creditors will affect Debtor's cashflow.  Any increases in revenue and expenses set forth in the projections are based upon current market conditions,

historical growth and anticipated growth. Where there is a conflict between the terms of the Plan and the projections, the terms of the Plan shall control. The projections are being provided for illustrative purposes. The projections assume that the current economic conditions will continue for the term of the plan.

Debtor has attached a summary of Debtor's financial information relating to the Debtor's post-petition operations.

Debtor has attached a summary of Debtor's financial condition prior to the commencement of Debtor's bankruptcy proceeding.

### C. **Post-Petition Details**

Debtor proposes to continue its operations/financial affairs with the same management structure.

### D. omitted

### E. **Tax Ramifications**

#### 1. **To Debtor**

Debtor believes that the forgiveness of indebtedness which may result from a discharge granted by the confirmation of the Plan will not result in any significant adverse tax consequence to the Debtor.

#### 2. **To Creditors**

The tax consequences to each Creditor resulting from confirmation of the Plan may vary depending upon each Creditor's particular circumstances. Debtor recommends that creditors or holders of Claims obtain independent tax counsel to advise them as to the tax consequences of the Plan.

# VII.   LEGAL REQUIREMENTS

*A. Voting procedures*
*Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interest, that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the plan.*

*Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.*

*Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or(b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3018.*

*Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the debtor's attorney by the deadline previously established by the court.*

*Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.*

*A ballot that is not received by the deadline will not be counted.*

*If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the debtor's attorney.*

*B. Acceptance*
*The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.*

*C. Confirmation*
*11 U.S.C. § 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process. Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are*

35

*these:*

*1. Each class of impaired creditors and interest must accept the plan, as described in paragraph VII.B., above.*

*2. Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.*

*D. Modification*
*The debtor reserves the right to modify or withdraw the plan at any time before confirmation.*

*E. Effect of confirmation*
*If the plan is confirmed by the Court:*

*1. Its terms are binding on the debtor, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.*

*2. Except as provided in the plan and in 11 U.S.C. § 1141(d)(5):*

*(a) In the case of a corporation that is reorganizing and continuing business:*
*(1) All claims and interests will be discharged.*
*(2) Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.*

*(b) In the case of a corporation that is liquidating and not continuing its business:*
*(1) Claims and interests will not be discharged.*
*(2) Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.*

*(c) In the case of an individual or husband and wife:*
*(1) Claims will be discharged, except as provided in 11 U.S.C. §§ 523and 1141(d)(3).*
*(2) Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11U.S.C. §§ 523 and 1141(d)(3).*

*Because the case is an individual, Section E. 2(c) above applies and 2(b) and 2(a) do not apply.*

**DEBTOR**

By: _____/s/  Thamer and Lamia Gasso _____
Debtors

Dated: 2/19/2014

Prepared By:


By: /s/ Robert N. Bassel
Robert N. Bassel  (P 48420)
Attorneys for Debtor
P.O. Box T
Clinton, MI 49236
248.835.7683